UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FALINE ARNOLD,

        Plaintiff,

v.                                    ACTION NO. 2:22cv384

HUNTINGTON INGALLS INCORPORATED,

        Defendant.

## OPINION

In this action, pro se Plaintiff Faline Arnold ("Plaintiff")
asserts various employment-related claims against her former
employer, Defendant Huntington Ingalls Incorporated ("Defendant").
See generally Third Am. Compl., ECF No. 52. This matter is before
the court on the following motions:

    (i)     Defendant's Motion to Dismiss, ECF No. 53;

    (ii)    Plaintiff's Motion to Seal ("First Motion to
              Seal"), ECF No. 55;

    (iii)   Plaintiff's Motion to File Surreply, ECF No. 58;

    (iv)    Plaintiff's Motion to Seal ("Second Motion to
              Seal"), ECF No. 62;

    (v)     Plaintiff's Motion to File Supplemental
              Memorandum, ECF No. 66; and

    (vi)    Plaintiff's Motion to Expedite Proceedings, ECF
              No. 70.

The court concludes that oral argument is unnecessary because
the facts and legal arguments are adequately presented in the

parties' briefs.  For the reasons set forth below, Plaintiff's First Motion to Seal, ECF No. 55, is **DENIED**; Plaintiff's Second Motion to Seal, ECF No. 62, is **DENIED**; Plaintiff's Motion to File Surreply, ECF No. 58, is **GRANTED**; Plaintiff's Motion to File Supplemental Memorandum, ECF No. 66, is **DENIED**; Defendant's Motion to Dismiss, ECF No. 53, is **GRANTED in part** and **DENIED in part**, as detailed more fully herein; this action will proceed on Plaintiff's Title VII sexual harassment claim, Title VII retaliation claim, FMLA interference claim, FMLA retaliation claim, and constructive discharge claim; Defendant is **ORDERED** to file an Answer as to these remaining claims within twenty-one days of the entry date of this Opinion; and Plaintiff's Motion to Expedite Proceedings, ECF No. 70, is **DENIED**.

## I. Relevant Procedural Background

In an Order entered on January 23, 2024, the court authorized the filing of Plaintiff's Third Amended Complaint and ordered Defendant to file a responsive pleading within twenty-one days. Order at 4, ECF No. 51.  Defendant timely filed a Motion to Dismiss and notified Plaintiff, in accordance with Local Civil Rule 7(K), of her right to respond to the motion.  Mot. Dismiss at 1-2, ECF No. 53; see E.D. Va. Loc. Civ. R. 7(K).  Plaintiff filed an Opposition to Defendant's Motion to Dismiss, and Defendant filed a Reply.  Opp'n, ECF No. 56; Reply, ECF No. 57.  Thereafter, Plaintiff filed a First Motion to Seal, a Second Motion to Seal,

2

a Motion to File Surreply, a Motion to File Supplemental Memorandum, and a Motion to Expedite Proceedings. First Mot. Seal, ECF No. 55; Second Mot. Seal, ECF No. 62; Mot. File Surreply, ECF No. 58; Mot. File Suppl. Mem., ECF No. 66; Mot. Expedite Proceedings, ECF No. 70. All pending motions are ripe for a decision.

## II. Plaintiff's Third Amended Complaint

### A. Plaintiff's Harassment-Related Allegations

In her Third Amended Complaint, Plaintiff alleges that she is a female, "[m]ixed-race [m]inority,"[1] who previously worked for Defendant as a Marine Electrician. Third Am. Compl. at 4. Plaintiff alleges that Linwood Gatling, a co-worker, began sexually harassing her in February or March of 2020. Id. at 5. Specifically, Plaintiff alleges that Mr. Gatling grabbed Plaintiff's wrists, "tried to forcefully pull [Plaintiff's] body into his," and tried to kiss Plaintiff. Id. Plaintiff further alleges that in April of 2020, Mr. Gatling talked explicitly to Plaintiff about her anatomy and "express[ed] his sexual fantasies about [Plaintiff]." Id. Plaintiff advised Mr. Gatling that his conduct was inappropriate and asked him to stop. Id.

---

[1] Plaintiff specifically states that she is of Caucasian, African American, and Puerto Rican descent. Third Am. Compl. at 4, ECF No. 52.

3

Plaintiff alleges that "[s]ometime during 2020," Mr. Gatling continued to comment on Plaintiff's anatomy, slid his hand up Plaintiff's thigh, grabbed Plaintiff's buttocks, "tried to go more inwardly near [Plaintiff's] private area," grabbed Plaintiff's face "aggressively," and tried to kiss Plaintiff.  Id. at 5-6. Mr. Gatling accused Plaintiff of "play[ing] hard to get" and asked Plaintiff to "stop making it hard for him to love [her]."  Id. at 6.

Plaintiff alleges that in May and June of 2020, another co-worker, Kevin Cressman, began to sexually harass her.  Id. at 10. Mr. Cressman sent Plaintiff inappropriate messages on Facebook that referenced Plaintiff's anatomy and included pictures of condoms.  Id.  Mr. Cressman also invited Plaintiff to his house. Id.

Plaintiff alleges that in August of 2020, Mr. Gatling "expressed his sexual attraction to [Plaintiff's] race and color," invited Plaintiff to Fort Monroe Beach, and asked Plaintiff to take tequila shots with him.  Id. at 6.  When Plaintiff rejected Mr. Gatling's advances, Mr. Gatling made work more difficult for Plaintiff.  Id.

Plaintiff alleges that during this timeframe, Mr. Cressman also continued to sexually harass Plaintiff.  Id. at 10.  Mr. Cressman asked Plaintiff about her preferred sexual practices and explained in "explicit detail[]" the sexual acts that Mr. Cressman

4

wanted to perform with Plaintiff. Id. When Plaintiff rejected Mr. Cressman's advances, Mr. Cressman "made life at work a living nightmare." Id. at 11. In September of 2020, Mr. Cressman apologized for his behavior; however, Mr. Cressman continued to send Plaintiff messages about sex. Id.

Plaintiff alleges that "[t]hrough the months of 2020," she complained to her foreman, Wesley Harris, about the harassment.[2] Id. at 15. Despite the complaints, Plaintiff "continued to be partnered with [her] abusers" and "worked with them in the same space on the same boat." Id.

Plaintiff alleges that in November and December of 2020, Mr. Gatling "continued his unwanted[,] sexually offensive remarks" and started spreading rumors with another co-worker, Regina Arline, about Plaintiff's sexual orientation. Id. at 7.

Plaintiff alleges that while she was working with Mr. Gatling on a cable job in February of 2021, Mr. Gatling "tried to get extremely close to [Plaintiff] to press his body near [hers]." Id. at 8. Plaintiff asked Mr. Gatling to "not do that," and Mr. Gatling "sat back down" and made "rude[,] inappropriate comments

---

[2] Plaintiff specifically alleges that she complained to Mr. Harris about the harassment in August, November, and December of 2020, and in February, March, and April of 2021. Third Am. Compl. at 7, 16-18, ECF No. 52. Plaintiff also alleges that she complained to a Human Resources representative, Elizabeth Bridges, in March and April of 2021, and to another foreman, Andrew Sidney, in April and July of 2021. Id. at 17-19, 21.

about [Plaintiff]" with other co-workers. Id. The following month, while Plaintiff was working on other jobs with another male co-worker, Mr. Gatling would "c[o]me to the jobs" and "stare at [Plaintiff]." Id.

Plaintiff alleges that in April of 2021, while Plaintiff was working alone on a job, she bent over to pick up drawings and documents that had fallen on the floor. Id. "While doing this, [Plaintiff] felt a man's private part area touching and pressing into [Plaintiff's] buttocks area." Id. It was Mr. Gatling. Id. Mr. Gatling asked Plaintiff why she "continue[d] to play hard to get" and grabbed Plaintiff "closer to his body." Id. at 8-9. Plaintiff "broke free from his grip." Id. at 9.

Plaintiff alleges that shortly after this incident, Plaintiff and Mr. Gatling ended up in the same elevator at work. Id. Mr. Gatling pushed Plaintiff against the elevator wall, pinned Plaintiff's arms up, and tried to kiss Plaintiff. Id. Plaintiff yelled at Mr. Gatling to stop. Id.

Plaintiff alleges that in May of 2021, Mr. Gatling showed Plaintiff a video of him "having sex with his wife." Id. Mr. Gatling told Plaintiff that "when he is having sex with [his wife], he thinks about [Plaintiff]." Id.

Plaintiff alleges that she was "moved back to [Mr.] Cressman's team" in April or May of 2021, and that Mr. Cressman still attempted to "explicitly talk about sex." Id. at 12. In June of

6

2021, Mr. Cressman spoke "very badly about [Plaintiff]" to another employee.  Id.  The employee defended Plaintiff, which made Mr. Cressman assume that Plaintiff was "dating" the employee.  Id. Mr. Cressman "made [Plaintiff's] life very hard at work" and would "leer[]" at Plaintiff, making her "feel uncomfortable." Id.  Mr. Cressman also continued to "pressure[] [Plaintiff] to talk to him (about sex and other things)." Id. at 13.

Plaintiff alleges that in July of 2021, Mr. Cressman refused to work a "massive cable job" with Plaintiff "because he assumed [Plaintiff] was dating another employee on [the] team." Id.  In August of 2021, Mr. Cressman "came to the lunch table" and "told the other male employees how he tried to get sexually involved with [Plaintiff]," but Plaintiff refused.  Id.  The other male employees asked Plaintiff "why [she] didn't sleep with [Mr. Cressman]," and Plaintiff explained that she "did not feel comfortable with the conversation." Id. at 14.

Plaintiff further alleges that "[f]requently in 2020 and on-going into most of 2021," Ms. Arline "verbally abused [Plaintiff] by calling [her] names," such as "Dumb Bit**" and "light skinned Bit**[]," and telling other co-workers that Plaintiff "was easy to sleep with." Id.  Plaintiff claims that Ms. Arline's conduct constituted harassment on the basis of Plaintiff's color and sexual orientation.  Id.

## B. Plaintiff's FMLA-Related Allegations

Plaintiff alleges that in March of 2021, she "tried to request FMLA forms for two major reasons." Third Am. Compl. at 16. First, Plaintiff wanted to take leave to care for her mother, who had suffered "heart failure and a life-threatening situation that was affecting her living abilities." Id. Additionally, Plaintiff wanted to take "time away from the abuse [she] was receiving at work." Id. Plaintiff submitted "medical documentation[]" to "management" that explained her mother's health issues. Id. Plaintiff's foreman, Mr. Harris, agreed "to obtain the FMLA forms" for Plaintiff, and Plaintiff received the FMLA forms in April of 2021. Id. at 17-18.

Plaintiff alleges that she had "dilemmas" with the FMLA forms. Id. at 19 (referring to difficulties with a "[f]ax machine" and with "locating her doctor"). Id. Plaintiff alleges that she asked management for "other solutions to help in the matter," but did not receive assistance. Id.

Plaintiff alleges that she mentioned her need for FMLA leave again in June of 2021. Id. at 20. Plaintiff alleges that she needed a signature from an "out of state" doctor, and asked "to take a leave of absence" to allow her to "obtain the last needed information for [her] FMLA" paperwork. Id. Plaintiff's foreman and his "management team" denied Plaintiff's request for a leave of absence. Id. In June, July, and August of 2021, Plaintiff

8

spoke to her union representative, her foreman, and/or
"[m]anagement" about her need for FMLA leave; however, it does not
appear that Plaintiff's FMLA issues were resolved. Id. at 20-21.

### C. The End of Plaintiff's Employment and the Filing of Plaintiff's EEOC Charge

Plaintiff alleges that she was "constructively discharged"
from her employment in August of 2021. Id. at 21. On December
12, 2021, Plaintiff filed a Charge of Discrimination against
Defendant with the EEOC. EEOC Charge, ECF No. 54-1. In the EEOC
Charge, Plaintiff checked the boxes to indicate that she was
asserting claims of sex discrimination and retaliation against
Defendant. Id. at 1. Plaintiff's EEOC Charge made no mention of
race discrimination, color discrimination, or sexual orientation
discrimination. Id. at 1-3.

### D. Plaintiff's Lawsuit

Plaintiff initiated the instant action on September 12, 2022.
IFP Appl., ECF No. 1. In her Third Amended Complaint, Plaintiff
asserts eight counts of employment-related claims against
Defendant. Third Am. Compl. at 23-30. In Count I, Plaintiff
asserts a Title VII claim against Defendant for harassment/hostile
work environment based on Plaintiff's sex, race, color, and sexual
orientation. Id. at 23-24. In Count II, Plaintiff asserts a Title
VII claim against Defendant for quid pro quo sexual harassment.
Id. at 24. In Count III, Plaintiff asserts a Title VII retaliation

claim against Defendant.  Id. at 24-27.  In Count IV, Plaintiff asserts a claim against Defendant pursuant to Title I of the Civil Rights Act of 1991.[3]  Id. at 27-28.  In Count V, Plaintiff asserts a claim against Defendant pursuant to 42 U.S.C. § 1981a.[4]  Id. at 28.  In Counts VI and VII, Plaintiff asserts FMLA claims against Defendant.  Id. at 28-29.  In Count VIII, Plaintiff asserts a constructive discharge claim against Defendant.  Id. at 30.

### III. Plaintiff's Motions to Seal

In her First Motion to Seal, Plaintiff asks the court to seal certain documents attached to Plaintiff's Opposition to Defendant's Motion to Dismiss, including: Defendant's "yard violations, Policies, Position Statement, Injury report, [an] email from Amina Cooper to management, union information from management, text messages between Foreman Wesley Harris and [Plaintiff], and [Defendant's] FMLA Record Keeping."  First Mot. Seal at 1, ECF No. 55.  In her Second Motion to Seal, Plaintiff asks the court to seal documents attached to Plaintiff's proposed Surreply, including: "the Certification of Health Care Provider," Plaintiff's "Personal Leave of Absence Form," "an email from the

---

[3] Count IV is mistakenly titled, "Title [sic] of the Civil Rights Act of 1991"; however, on page one of the Third Amended Complaint, Plaintiff states that she intends to assert a claim against Defendant pursuant to Title I of the Civil Rights Act of 1991.  Third Am. Compl. at 1, 27, ECF No. 52.  See infra Part VI.B.5 for discussion of Title I.

[4] See infra Part VI.B.6 for discussion of 42 U.S.C. § 1981a.

EEOC," and "correspondence directed to the EEOC investigator requesting an amendment and the addition of new charges to [Plaintiff's] claim." Second Mot. Seal at 1, ECF No. 62.

Plaintiff argues that the above-referenced documents should be sealed to protect the privacy interests of Defendant and/or the EEOC. First Mot. Seal at 2; Second Mot. Seal at 2. Defendant opposes Plaintiff's sealing requests and asks the court to maintain the documents on the public record. Opp'n at 1, ECF No. 63.

"Motions to file documents under seal are disfavored and discouraged," and require compliance with the procedures set forth in the Local Civil Rules. E.D. Va. Loc. R. 5(A), (C). Upon review of Plaintiff's motions, the court finds that Plaintiff has not complied with the sealing-related procedures set forth in the court's Local Civil Rules and has not otherwise established that the materials in question should be sealed. Accordingly, Plaintiff's First Motion to Seal, ECF No. 55, and Plaintiff's Second Motion to Seal, ECF No. 62, are **DENIED**.

## IV. Plaintiff's Motion to File Surreply

Shortly after the briefing closed on Defendant's Motion to Dismiss, Plaintiff filed a Motion to File Surreply. Mot. Leave File Surreply, ECF No. 58. Twelve days later, Plaintiff filed a proposed Surreply. Surreply, ECF No. 61.

Pursuant to Local Civil Rule 7(F)(1), after a non-moving party files a brief in opposition to an opposing party's motion and the

moving party files a reply brief, "[n]o further briefs or written communications may be filed without first obtaining leave of [c]ourt." E.D. Va. Loc. Civ. R. 7(F)(1). In deference to Plaintiff's pro se status, the court will allow Plaintiff to file her Surreply. Accordingly, Plaintiff's Motion to File Surreply, ECF No. 58, is **GRANTED**. The court will consider Plaintiff's Surreply in its analysis of Defendant's Motion to Dismiss.

## V. Plaintiff's Motion to File Supplemental Memorandum

On April 15, 2024, Defendant filed a Notice, in which Defendant explained that its Motion to Dismiss was "ready for adjudication" and requested a decision without a hearing. Notice at 1, ECF No. 64. In its Notice, Defendant also addressed certain aspects of Plaintiff's proposed Surreply. Id.

In response to Defendant's Notice, Plaintiff filed another legal memorandum ("Response to Defendant's Notice"). Resp. Def.'s Notice, ECF No. 65. Four days later, Plaintiff filed a Motion to File Supplemental Memorandum. Mot. File Suppl. Mem., ECF No. 66. In her motion, Plaintiff states that a supplemental memorandum is necessary "to correct errors and to add new information pertinent to . . . [P]laintiff's arguments against the [D]efendant's Notice/Motion." Id. at 1.

Defendant's Motion to Dismiss is fully briefed. As explained above, the court has authorized the filing of Plaintiff's Surreply; however, the court finds that no further briefing or legal argument

is warranted. See E.D. Va. Loc. Civ. R. 7(F)(1). Thus, the court will not consider the legal arguments raised in Defendant's Notice or Plaintiff's Response to Defendant's Notice. As a result, there is no need for Plaintiff to file a supplemental memorandum. Accordingly, Plaintiff's Motion to File Supplemental Memorandum, ECF No. 66, is **DENIED**.

## VI. Defendant's Motion to Dismiss[5]

### A. Legal Standard

Defendant asks the court to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. Dismiss at 1. A motion to dismiss under Rule 12(b)(6) should be granted if a complaint fails to "allege facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A Rule 12(b)(6) motion "tests the sufficiency of a complaint and 'does not resolve contests

---

[5] The court notes that Plaintiff claims in her Opposition that Defendant's Motion to Dismiss is procedurally improper and reiterates arguments that "this court has already denied." Opp'n at 2, ECF No. 56. Plaintiff is mistaken. Defendant filed a prior Motion to Dismiss that requested the dismissal of Plaintiff's Second Amended Complaint, which previously served as the operative complaint in this action. See Second Am. Compl., ECF No. 9; Mot. Dismiss, ECF No. 15. In an Order entered on January 23, 2024, the court authorized the filing of Plaintiff's Third Amended Complaint. Order at 4, ECF No. 51. Because Plaintiff's Third Amended Complaint would serve as the new operative complaint, the court dismissed Defendant's prior dismissal motion as moot, without reaching its merits, and ordered Defendant to respond to Plaintiff's Third Amended Complaint within twenty-one days. Id. at 5. Defendant timely and properly filed the instant Motion to Dismiss, pursuant to the court's instructions.

surrounding the facts, the merits of a claim, or the applicability of defenses.'" Johnson v. Portfolio Recovery Assocs., LLC, 682 F. Supp. 2d 560, 567 (E.D. Va. 2009) (quoting Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). As such, the court must accept all factual allegations contained in Plaintiff's Third Amended Complaint as true and draw all reasonable inferences in favor of Plaintiff. Id.

"In cases where the plaintiff appears pro se, courts do not expect the pro se plaintiff to frame legal issues with the clarity and precision expected from lawyers." Suggs v. M&T Bank, 230 F. Supp. 3d 458, 461 (E.D. Va. 2017). In such cases, courts are required to construe the operative complaint liberally. Id.

## B. Analysis

### 1. Count I: Title VII Sexual Harassment/Hostile Work Environment

In Count I of the Third Amended Complaint, Plaintiff claims that Defendant subjected her to harassment and a hostile work environment on the basis of Plaintiff's sex, race, color, and sexual orientation. Third Am. Compl. at 23-24.

#### a. Plaintiff's Race, Color, and Sexual Orientation-Related Allegations

Defendant argues that Plaintiff's race, color, and/or sexual orientation cannot serve as the basis for her Title VII harassment/hostile work environment claim because Plaintiff did not mention any of these protected categories in her EEOC Charge.

Mem. Supp. Mot. Dismiss at 15-17, ECF No. 54; see EEOC Charge at 1-3.  The court agrees.

Before filing a Title VII claim in federal district court, a plaintiff must first file an administrative charge with the EEOC and exhaust the plaintiff's administrative remedies.  Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005).  The administrative charge filed with the EEOC "plays a substantial role in focusing the formal litigation it precedes."  Id. at 509. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint [of discrimination in the charge], and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); see Chacko, 429 F.3d at 509 (noting that a "plaintiff's claim generally will be barred if [her] charge alleges discrimination on one basis—such as race— and [she] introduces another basis in formal litigation—such as sex").

Upon review, the court finds that Plaintiff's EEOC Charge focused solely on allegations of sexual harassment and retaliation, and made no mention of Plaintiff's race, color, or sexual orientation.  EEOC Charge at 1-3.  Additionally, the court finds that the allegations of race, color, and sexual orientation discrimination, as asserted in the Third Amended Complaint, are

15

not "reasonably related" to the allegations of Plaintiff's EEOC Charge.  See Chacko, 429 F.3d at 509; Evans, 80 F.3d at 963. Therefore, the court concludes that Plaintiff failed to exhaust the administrative remedies on any Title VII claims involving Plaintiff's race, color, and/or sexual orientation.  Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to the portion of Count I that seeks to assert a Title VII harassment/hostile work environment claim based on Plaintiff's race, color, and/or sexual orientation.

### b. Plaintiff's Sexual Harassment Claim

In its Motion to Dismiss, Defendant argues that the remainder of Count I, i.e., Plaintiff's sexual harassment claim based on a hostile work environment theory, should be dismissed because it fails to allege facts sufficient to state a plausible claim for relief.  Mem. Supp. Mot. Dismiss at 13-25.

### i. Timeliness

To support its request for dismissal, Defendant argues that many of the alleged facts upon which Plaintiff's Title VII sexual harassment claim is based are untimely and should not be considered by the court.  Id. at 17-19.  The court is not persuaded by Defendant's timeliness argument.

In Virginia, an individual must file an administrative charge with the EEOC within "300 days from the last date of alleged discrimination."  Edwards v. Murphy-Brown, L.L.C., 760 F. Supp. 2d

16

607, 619 (E.D. Va. 2011). However, courts recognize that when a sexual harassment claim is based on a hostile work environment theory, "a court is not necessarily constrained in its analysis to only consider actions that occurred within 300 days of filing the EEOC Charge." Id. at 620. Unlike a discrete act of discrimination, a hostile work environment "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 221 (4th Cir. 2016) (citation omitted). Therefore, such claims may be subject to a "continuing violation" theory. Id. The Fourth Circuit has summarized the "continuing violation" theory as follows:

> "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,'" and "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." In other words, even if most of the harassing conduct on which a plaintiff relies to establish her hostile work environment claim occurred outside the statutory period, the claim will be considered timely if at least one act continuing the violation occurred within the statutory period. Furthermore, the plaintiff may recover for all of the harm resulting from the hostile work environment, not just those contributing acts that occurred during the statutory period.

Id. at 222 (citations omitted); see Edwards, 760 F. Supp. 2d at 620.

Here, Plaintiff filed her EEOC Charge on December 12, 2021, and many of the Plaintiff's allegations of sexual harassment occurred more than 300 days prior to the filing of Plaintiff's EEOC Charge, i.e., prior to February 15, 2021. EEOC Charge at 1-3; see Third Am. Compl. at 1-24. However, the court finds that Plaintiff has adequately alleged that several acts that contributed to the hostile work environment took place within the statutory time period. See Third Am. Compl. at 1-24. Thus, at this stage of the proceedings, the court finds that pro se Plaintiff has adequately invoked the continuing violation doctrine. See id. Therefore, the court finds that the Plaintiff's allegations regarding sexual harassment occurring prior to February 15, 2021, will still be considered "timely and part of one unitary hostile work environment at this juncture."[6] Edwards, 760 F. Supp. 2d at 625.

## ii. Severity and Pervasiveness

Defendant also argues that Plaintiff's sexual harassment claim should be dismissed pursuant to Rule 12(b)(6) because the allegations of harassment do not rise to the level of severity and

---

[6] As courts have explained, "evidence developed during discovery may tend to strengthen or undermine" a plaintiff's entitlement to the continuing violation theory. Edwards v. Murphy-Brown, L.L.C., 760 F. Supp. 2d 607, 625 (E.D. Va. 2011). Thus, Defendant is free to raise its timeliness argument in a future dispositive motion, with an expanded record.

pervasiveness necessary to state a plausible claim for relief. Mem. Supp. Mot. Dismiss at 19-25.

To state a sexual harassment claim under Title VII, Plaintiff must adequately allege that (i) she experienced unwelcome harassment; (ii) the harassment was based on sex; (iii) the harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive atmosphere; and (iv) there is some basis for imposing liability on Defendant. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

In determining whether alleged actions are "sufficiently severe or pervasive," courts will conduct a "subjective and objective assessment" of the claimed harassment. Jones v. HCA, 16 F. Supp. 3d 622, 630 (E.D. Va. 2014). The harassment must be "perceived by the victim as hostile or abusive, and that perception must be reasonable." Id. When analyzing whether the alleged harassment is objectively severe or pervasive, "courts consider 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (citing Harris, 510 U.S. at 23); see Jones v. Tyson Foods, Inc., 378 F. Supp. 2d 705, 712-13 (E.D. Va. 2004).

19

Upon review, the court finds that pro se Plaintiff's Third Amended Complaint, liberally construed, alleges facts sufficient to satisfy all of the requirements for a sexual harassment claim, including the "severe or pervasive" conduct requirement. See Third Am. Compl. at 1-22; see also Jones v. HCA, 16 F. Supp. 3d at 630.

For all of these reasons, Defendant's Motion to Dismiss is **DENIED** as to the portion of Count I that asserts a Title VII sexual harassment claim against Defendant.

### 2. Count II: Title VII Quid Pro Quo Sexual Harassment

In Count II of the Third Amended Complaint, Plaintiff asserts a quid pro quo sexual harassment claim against Defendant. Third Am. Compl. at 24. To support this claim, Plaintiff alleges that between February of 2020 and August of 2021, she was subjected to "unwelcome sexual advances, unwelcome requests for sexual favors, and unwelcome[] touching," and that if she resisted such conduct, the offending employees "would stop working" on jobs with Plaintiff, which caused Plaintiff "strain" and resulted in "more work-related injuries." Id. Defendant argues that Plaintiff's quid pro quo sexual harassment claim must be dismissed because such claims are only actionable if the alleged harasser is the complainant's supervisor. Mem. Supp. Mot. Dismiss at 13.

As the United States Court of Appeals for the Fourth Circuit has explained, the elements necessary to establish a quid pro quo sexual harassment claim differ from the elements necessary to

20

establish a hostile work environment sexual harassment claim. Moser v. MCC Outdoor, L.L.C., 256 F. App'x 634, 642 (4th Cir. 2007). To state a claim for quid pro quo sexual harassment, a plaintiff must allege "that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." Id. (citation omitted); see Ecklund v. Fuisz Tech., 905 F. Supp. 335, 339 (4th Cir. 1995).

Here, the court finds that Plaintiff's Third Amended Complaint does not adequately show that (i) Plaintiff's alleged harassers held any type of supervisory authority over Plaintiff; or (ii) the consequences of Plaintiff's denial of the alleged harassers' advances resulted in a "tangible employment action." See Third Am. Compl. at 1-32; see also Moser, 256 F. App'x at 642; Ecklund, 905 F. Supp. at 339. Without such factual allegations, the court finds that Plaintiff's quid pro quo sexual harassment claim cannot withstand Defendant's challenge under Rule 12(b)(6). See Atkins v. Computer Scis. Corp., 264 F. Supp. 2d 404, 411-412 (E.D. Va. 2003). Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to the quid pro quo sexual harassment claim asserted in Count II of the Third Amended Complaint.

### 3. Count VIII: Constructive Discharge

In Count VIII of the Third Amended Complaint, Plaintiff asserts a constructive discharge claim against Defendant. Third Am. Compl. at 30. To state a claim for constructive discharge, a

21

plaintiff must adequately allege that she "'was discriminated against by h[er] employer to the point where a reasonable person in h[er] position would have felt compelled to resign' and that she actually resigned." Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019) (citation omitted).

Defendant argues that Plaintiff's constructive discharge claim fails because Plaintiff does not allege facts sufficient to plausibly show that Defendant's conduct was objectively intolerable. Mem. Supp. Mot. Dismiss at 26-27. While the ultimate viability of Plaintiff's constructive discharge claim is unclear, the court finds that pro se Plaintiff's factual allegations, liberally construed, are sufficient to withstand Defendant's challenge under Rule 12(b)(6). Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Defendant's request to dismiss the constructive discharge claim asserted in Count VIII of the Third Amended Complaint.

### 4. Count III: Title VII Retaliation Claim

Plaintiff asserts a Title VII retaliation claim against Defendant in Count III of the Third Amended Complaint. Third Am. Compl. at 24-27. To state a prima facie claim of retaliation under Title VII, a plaintiff must adequately allege that: (i) she engaged in protected activity; (ii) she was subjected to an adverse employment action; and (iii) there was a causal connection between the protected activity and the adverse employment action. Laber

22

v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006); King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003).

Defendant does not appear to dispute that Plaintiff adequately alleged that she engaged in protected activity under Title VII. Mem. Supp. Mot. Dismiss at 27-28; see Third Am. Compl. at 14-22 (identifying several instances whereby Plaintiff complained to supervisors about the alleged workplace harassment). However, Defendant argues that Plaintiff's Title VII retaliation claim fails because Plaintiff has not alleged facts sufficient to show that she was subjected to an adverse employment action because of her protected activity. Mem. Supp. Mot. Dismiss at 27-28.

Based on a liberal construction of pro se Plaintiff's Third Amended Complaint, the court finds that Plaintiff has adequately alleged that she suffered an adverse employment action, i.e., she was constructively discharged, as a result of her protected activity. See Third Am. Compl. at 26-27; see also McKinley v. Salvation Army, 685 F. App'x 227, 228 (4th Cir. 2017) (noting that "[a] constructive discharge can constitute an adverse employment action" for purposes of a Title VII retaliation claim); Bailey v. Va. Dep't of Alcoholic Bev. Control, No. 2:18cv392, 2019 U.S. Dist. LEXIS 108051, at *16-17 (E.D. Va. Apr. 25, 2019) (same). It is unclear whether Plaintiff will ultimately be able to prove the elements necessary to establish a constructive discharge; however, "at this stage, the [c]ourt only considers whether the claim

23

alleges sufficient facts which, if true, would permit a reasonable fact finder to find Defendant liable." Bailey, 2019 U.S. Dist. LEXIS 108051, at *18. The court finds that pro se Plaintiff has adequately alleged such facts.

Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Defendant's request to dismiss the Title VII retaliation claim asserted in Count III of the Amended Complaint.

### 5. Count IV: Title I of the Civil Rights Act of 1991

In Count IV of the Third Amended Complaint, Plaintiff asserts a claim against Defendant pursuant to Title I of the Civil Rights Act of 1991. Third Am. Compl. at 27. Defendant argues that Count IV must be dismissed because Title I does not provide for a private cause of action. Mem. Supp. Mot. Dismiss at 12.

Defendant's argument comports with the law. As courts have explained, Title I "provides a prevailing plaintiff in an intentional employment discrimination case the ability to recover compensatory and punitive damages from the defendant," but the statute "does not create a new substantive right or an independent cause of action." Wilkins v. Tenn. Dep't of Children's Servs., No. 3:18cv102, 2018 U.S. Dist. LEXIS 206227, at *9 (M.D. Tenn. Dec. 6, 2018) (citation omitted); see Cross v. Massachusetts, No. 18-11765, 2019 U.S. Dist. LEXIS 73191, at *6 (D. Mass. May 1, 2019) (noting that Title I expands "the relief available to victims of employment discrimination" but "does not create an independent

cause of action"). Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to the Title I claim asserted in Count IV of the Third Amended Complaint.

### 6. Count V: Plaintiff's Claim Under 42 U.S.C. § 1981a

In Count V of the Third Amended Complaint, Plaintiff purports to assert a cause of action against Defendant pursuant to 42 U.S.C. § 1981a. Third Am. Compl. at 28. As an initial matter, the court notes that § 1981a "simply 'addresses remedies and procedures in Title VII actions'" and does not provide for an independent cause of action. Lee v. McDonough, No. 22-319, 2024 U.S. Dist. LEXIS 147333, at *34-35 (D.D.C. Aug. 19, 2024) (citation omitted). For this reason alone, the court finds that Count V is subject to dismissal.

In its Motion to Dismiss, Defendant presumes that Plaintiff intended to assert a claim pursuant to 42 U.S.C. § 1981, and argues that such claim is also subject to dismissal under Rule 12(b)(6). Mem. Supp. Mot. Dismiss at 13-21.

Section 1981 provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a); see Spellman v. Sch. Bd. of Chesapeake, No. 2:17cv635, 2018 U.S. Dist. LEXIS 73709, at *40 (E.D. Va. Apr. 5, 2018) (explaining that § 1981 "bars discrimination on the basis of race and ethnicity, or lack of citizenship" (emphasis removed)), adopted by 2018 U.S. Dist. LEXIS 72960 (E.D. Va. Apr. 30, 2018).

Assuming Plaintiff intended to assert a claim against Defendant pursuant to § 1981, the court finds, after a thorough review of the Third Amended Complaint, that the allegations asserted therein, liberally construed, do not state a plausible claim of race or ethnicity discrimination under § 1981. See Third Am. Compl. at 1-32; see 42 U.S.C. § 1981(a); see also Spellman, 2018 U.S. Dist. LEXIS 73709, at *40. Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Count V of the Third Amended Complaint.

### 7. Counts VI and VII: Plaintiff's FMLA Claims

Plaintiff asserts FMLA claims against Defendant in Counts VI and VII of the Third Amended Complaint. Third Am. Compl. at 28-29. Counts VI and VII are inartfully drafted; however, it appears that Plaintiff seeks to assert an FMLA interference claim and an FMLA retaliation claim against Defendant. Id. Defendant argues that Plaintiff fails to allege facts sufficient to state any plausible claim for relief under the FMLA. Mem. Supp. Mot. Dismiss at 6-12.

To establish a prima facie case of interference with FMLA rights, a plaintiff must show that "(1) [s]he is entitled to an

FMLA benefit; (2) [her] employer interfered with the provision of that benefit; and (3) that interference caused harm." Boone v. Bd. of Governors of the Univ. of N.C., 858 F. App'x 622, 624 (4th Cir. 2021). To state an FMLA retaliation claim, a plaintiff must show that "(1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the adverse employment action was causally connected to the plaintiff's protected activity." Ainsworth v. Loudon County Sch. Bd., 851 F. Supp. 2d 963, 976 (E.D. Va. 2012) (citing Yashenko v. Harrah's N.C. Casino Co., 446 F.3d 541, 551 (4th Cir. 2006)).

Plaintiff's FMLA-related allegations, as summarized above, could benefit from further development; however, liberally construing the allegations, as the court must for pro se litigants, the court finds that they are minimally sufficient to withstand Defendant's challenge under Rule 12(b)(6). See supra Part II.B; Third Am. Compl. at 1-29; see also Boone, 858 F. App'x at 624; Ainsworth, 851 F. Supp. 2d at 976. Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's FMLA interference claim and FMLA retaliation claim.

### 8. Summary

Based on the court's findings above, this action will proceed on the following claims: Plaintiff's Title VII sexual harassment claim in Count I; Plaintiff's Title VII retaliation claim in Count III; Plaintiff's FMLA interference claim and FMLA retaliation

claim in Counts VI and VII; and Plaintiff's constructive discharge claim in Count VIII. Defendant is **ORDERED** to file an Answer as to these remaining claims within twenty-one days of the entry date of this Opinion.

## VII. Plaintiff's Motion to Expedite Proceedings

Plaintiff asks the court to "expedite the proceedings in this matter." Mot. Expedite Proceedings at 1, ECF No. 70. To support her request, Plaintiff states that she "is currently facing urgent family health issues." Id. at 2. Specifically, Plaintiff states that her mother is suffering from various medical conditions and lacks stable housing. Id. at 4-5. For these reasons, Plaintiff asks the court to expedite these proceedings and provide "a prompt resolution" of Plaintiff's claims. Id. at 2.

While the court is sympathetic to Plaintiff's family situation, the court finds that Plaintiff has not established that her requested relief is warranted. Thus, this case will proceed in its normal course. Accordingly, Plaintiff's Motion to Expedite Proceedings, ECF No. 70, is **DENIED**.

## VIII. Conclusion

For the reasons set forth above, Plaintiff's First Motion to Seal, ECF No. 55, is **DENIED**; Plaintiff's Second Motion to Seal, ECF No. 62, is **DENIED**; Plaintiff's Motion to File Surreply, ECF No. 58, is **GRANTED**; Plaintiff's Motion to File Supplemental Memorandum, ECF No. 66, is **DENIED**; Defendant's Motion to Dismiss,

ECF No. 53, is **GRANTED in part** and **DENIED in part**, as detailed herein; this action will proceed on Plaintiff's Title VII sexual harassment claim, Title VII retaliation claim, FMLA interference claim, FMLA retaliation claim, and constructive discharge claim; Defendant is **ORDERED** to file an Answer as to these remaining claims within twenty-one days of the entry date of this Opinion; and Plaintiff's Motion to Expedite Proceedings, ECF No. 70, is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Opinion to Plaintiff and counsel for Defendant.

IT IS SO **ORDERED**.

September 24 , 2024

/s/
Rebecca Beach Smith
**Senior United States District Judge**