UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FALINE ARNOLD,

      Plaintiff,

v.                                                  Action No. 2:22cv384

HUNTINGTON INGALLS INCORPORATED,

      Defendant.

**OPINION AND ORDER**

This matter is before the Court on Huntington Ingalls Incorporated's ("HII") motion for sanctions seeking dismissal of the case with prejudice. ECF No. 232. The factual background, procedural history, and analysis outlined in the report and recommendation entered contemporaneously with this opinion and order are incorporated as if fully set forth herein. *See* ECF No. 295. For the reasons stated in the report and recommendation, the Court finds that sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii) are just and appropriate to remedy Ms. Arnold's failure to comply with discovery obligations and discovery orders. The sanctions imposed are detailed below.

**I.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 37 "gives the district court wide discretion to impose sanctions for a party's failure to comply" with discovery obligations. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). Rule 37(b)(2) authorizes a district court to impose the following sanctions for failure to obey a discovery order: (i) directing that facts be taken as established; (ii) prohibiting designated claims or defenses or the use of certain

evidence; (iii) striking pleadings in whole or in part; (iv) staying the case until the default is cured; (v) dismissing the case in whole or in part; (vi) entering default judgment; and (vii) treating the failure to obey an order as contempt of court. Fed. R. Civ. P. 37(b)(2)(A). Rule 37(d)(3) also authorizes imposing the first six sanctions provided in Rule 37(b)(2)(A) if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii), (d)(3).

The Fourth Circuit has adopted a four-part test for determining whether (and, if so, which) Rule 37(d) sanctions are appropriate in a particular case. *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (en banc). The district court "must determine (1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Id.*

## II. DISCUSSION

As explained in the report and recommendation, Ms. Arnold acted in bad faith in failing to respond in timely and complete fashion to HII's discovery requests and failed to obey the Court's discovery orders, her actions prejudiced HII, and the need exists to deter further noncompliance. In summary, and as discussed in detail in the report and recommendation, Ms. Arnold failed to: (1) appear for the inspection of her cellphone or provide copies of ESI in compliance with Rule 34 on March 19, 2025; (2) timely provide documents in response to HII's requests for production of documents; (3) timely and completely produce text messages on her cellphone; (4) timely respond to the Court's order to provide an affidavit about documents produced to HII on April 21, 2025, or comply with the order when given an extension of time to do so; and (5) testify candidly during

the evidentiary hearing with respect to her production of discovery to HII. Thus, sanctions are appropriate pursuant to Rule 37(b) and (d).

The sanction of dismissing Ms. Arnold's case with prejudice is unwarranted, as discussed in the report and recommendation. Instead, a lesser sanction better serves the administration of justice and fits the facts of this case. Therefore, the Court exercises its discretion to limit Ms. Arnold's use of certain designated matters in support of her claims going forward. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii). To enable the parties to identify the evidence in question and to ensure compliance with this order, the Court lists below the disputed discovery items that Ms. Arnold may use to support her claims henceforth. It is impossible at this juncture to identify, from the universe of information Ms. Arnold claims to possess but has not disclosed in discovery, every documentary item that she is prohibited from using to support her claims. For the sake of clarity, however, the Court also partly identifies, from among the disputed items discussed by the parties in their recent filings, some of the items that Ms. Arnold may not use to support her claims.

A.   **Text Messages**

   1.   **Text messages subject to future use by Ms. Arnold.**

On April 21, 2025, Ms. Arnold produced to HII fourteen (14) sets of screenshots of text messages with different individuals and/or phone numbers. ECF No. 280, at 11–12. After reviewing the same, the Court determined that the screenshots produced on April 21, 2025 were "at best, woefully incomplete" and based on new information presented by Ms. Arnold directed her to produce "complete text message strings" to HII "in a complete, sequential, and accurate manner" by noon on May 19, 2025. ECF No. 283, at 2–3. On May 19, 2025, Ms. Arnold produced to HII four sets of text strings in four folders, along with nineteen (19) additional pages of screenshots, photographs, and three blank pages not contained in a folder. ECF No. 289, at 1–2.

3

After review and in light of the testimony and evidence received at the hearing on May 21, 2025, the Court finds that only three of the text message strings produced on May 19, 2025 by Ms. Arnold are sufficiently complete, sequential, and accurate. Accordingly, going forward Ms. Arnold may use, subject to objection and the Court's ruling on the same, only the following text messages in support of her claims:

> (a) 92 pages of text messages between Ms. Arnold and Mr. Harris' personal phone (# XXX-7338) from March 26, 2020 to January 13, 2022, as set forth in ECF No. 289-2, at 2–93;
>
> (b) 62 pages of text messages between Ms. Arnold and Mr. Harris' work phone (# XXX-2184) from March 9, 2020 to September 1, 2021, as set forth in ECF No. 289-3, at 2–63; and
>
> (c) 11 pages of text messages between Ms. Arnold and Mr. Andrews' phone (# XXX-5287) from May 20, 2020 to September 8, 2021, as set forth in ECF No. 289-4, at 2–12.[1]

### 2. Text messages and screenshots that Ms. Arnold is prohibited from using going forward.

Ms. Arnold failed to timely produce complete text strings of the text messages and screenshots noted below in response to HII's discovery requests and the Court's Orders.

---

[1] The Court rejects HII's contentions in defense counsel's affidavit, ECF No. 289, at 2 ¶ 6, and at the May 21, 2025 hearing, May 21, 2025 Hrg. Tr., ECF No. 294, at 124:5–21, that these three text message strings are incomplete because the cellphone application or "app" used to compile them stripped out certain non-text message items, such as multimedia messages, including pictures, videos, or GIFs. In response to questions at the May 21, 2025 hearing, Ms. Arnold satisfied the Court that the images in question were, in fact, contained in the actual text message residing on her cellphone and that she did not intentionally remove them to deprive HII of evidence or to mislead the Court. May 21 Hrg. Tr. 58:3–61:5  Accordingly, either party will be permitted to offer into evidence actual screenshots of select text messages included within the three, comprehensive text strings noted above depicting, for example, the pictures, emojis, etc., included with the pertinent text message. Ms. Arnold will not, however, be permitted to introduce into evidence text messages with these correspondents not included within the three text message strings noted above.

Accordingly, Ms. Arnold is prohibited from using the following to support her claims going forward:

(a) 4 pages of text messages between Ms. Arnold and Mr. Gatling's phone (# XXX-4831) from April 23, 2021 to April 25, 2021, as set forth in ECF No. 289-5, at 2–5;

(b) 19 pages of screenshots of text messages with various individuals, as well as photographs and 3 blank pages, as set forth in ECF No. 289-6, at 2–20;

(c) 2 pages of text messages between Ms. Arnold and Mr. Bethel's phone (# XXX-7757), as set forth in ECF No. 280-46, at 2–3;

(d) 2 pages of text messages between Ms. Arnold and Mr. Binetti's phone (# XXX-6163), as set forth in ECF No. 280-47, at 2;

(e) 7 pages of text messages between Ms. Arnold and Mr. Gatling's phone (# XXX-4831), as set forth in ECF No. 280-49, at 2–8;

(f) 1 page of text messages between Ms. Arnold and Ms. Jennings' phone (# XXX-7420), as set forth in ECF No. 280-52, at 2;

(g) 2 pages of text messages between Ms. Arnold and "Cooper['s]" phone (# XXX-4776), as set forth in ECF No. 280-53, at 2–3;

(h) 8 pages of text messages between Ms. Arnold and "G['s]" phone (# XXX-0702), as set forth in ECF No. 280-54, at 2–9;

(i) 5 pages of text messages between Ms. Arnold and "Michael['s]" phone (# XXX-3522), as set forth in ECF No. 280-55, at 2–6;

(j) 1 page of text messages between Ms. Arnold and Unknown's phone (# XXX-2418), as set forth in ECF No. 280-56, at 2;

(k) 1 page of text messages between Ms. Arnold and "Smith['s]" phone (# XXX-6871), as set forth in ECF No. 280-57, at 2;

(l) 2 pages of text messages between Ms. Arnold and Unknown's phone (# no number listed), as set forth in ECF No. 280-58, at 2–3;

(m) 2 pages of screenshots of call logs for phone (#XXX-4725), as set forth in ECF No. 280-59, at 2-3;

(n) 1 page of screenshot of phone dated April 17, 2021, as set forth in ECF No. 280-60, at 2;

(o) 3 pages of screenshots relating to "FMLA," Form WH-380, and "Discipline Meetings," as set forth in ECF No. 280-61, at 2-4;

(p) 4 pages of text messages between Ms. Arnold and Mr. Andrew's phone (# XXX-5287), as set forth in ECF No. 280-45, at 2–5, **unless such text messages are included within the complete text strings noted in items A(1)(a)–(c) above**;

(q) 18 pages of text messages between Ms. Arnold and Mr. Harris' personal phone (# XXX-7338), as set forth in ECF No. 280-50, at 2–19, **unless such text messages are included within the complete text strings noted in items A(1)(a)–(c) above**; and

(r) 21 pages of text messages between Ms. Arnold and Mr. Harris' work phone (# XXX-2184), as set forth in ECF No. 280-51, at 2–22, **unless such text messages are included within the complete text strings noted in items A(1)(a)–(c) above**.

The above-noted items require no further discussion, except for the string of text messages between Ms. Arnold and Mr. Gatling (item A(2)(a) above).[2] This text string contains only communications for the period of April 23–25, 2025. ECF No. 289-5, at 2–6. However, the first message from Mr. Gatling reads "I[']m not telling anyone," *id.* at 289-5, at 2, indicating the existence of related, prior messages that were not produced. At the May 21, 2025 evidentiary hearing, Ms. Arnold conceded as much, but vaguely attributed her failure to produce such messages to the operation of the app used to compile the messages and/or to the fact that she used different texting apps to communicate with Mr. Gatling. May 21, 2025 Hrg. Tr., ECF No. 294, at 82:18–85:5; *see id.* at 82:22–25 (stating she could show such other messages on her phone).

Notably, Ms. Arnold alleges in her third amended complaint that Mr. Gatling called and texted her sometime before November or December 2020 when she was off work due to a back injury and was frustrated that she did not respond. ECF No. 52, at 6–7. She also alleges meeting with her union representative in March 2021, reporting the sexual harassment and showing him

---

[2] The Court previously ruled that the preceding production of Gatling text message screenshots (item A(2)(e)) on April 21, 2025 was "at best, woefully incomplete." ECF No. 283, at 2.

text messages, and that she had a meeting in April 2021 with her union representative and HII employees where she showed them text messages from Mr. Gatling. *Id.* at 17, 19; *see* ECF No. 30-1, at 12–14 (timeline provided to the EEOC discussing Ms. Arnold's meeting with her union representative and others on March 22, 2021). The complaint's allegations indicate that text messages predating the text string produced on May 19, 2025, exist and are relevant to her claims.

HII requested production of text messages exchanged between Ms. Arnold and Mr. Gatling from January 1, 2020 through March 19, 2025. ECF No. 280-1; ECF No. 280-2, at 15; Mar. 11, 2025 Hrg. Tr., ECF No. 220, at 7:25–8:10. The Court repeatedly warned Ms. Arnold that failing to produce complete text message strings would result in her inability to rely on that evidence. Mar. 11 Hrg. Tr. 19:7–25; Apr. 15, 2025 Hrg. Tr., ECF No. 262, at 58:18–59:1. Accordingly, due to the undisputed existence of other messages with Mr. Gatling not produced by Ms. Arnold, she is prohibited from using any of her text message communications with Mr. Gatling, including the text string in item A(2)(a) above, to support her claims going forward.[3]

**B.     Document Production**

It is also necessary to sanction Ms. Arnold for her failures relating to her responses to HII's requests for production of documents. As to her document production (independent of the text messages and screenshots discussed above), Ms. Arnold is limited to using only the documentary evidence actually produced to HII on April 21, 2025. This consists of the 61 pages of documents listed in the chart attached to defense counsel's affidavit, ECF No. 280-37, as well as the 664 pages of documents produced by HII to Ms. Arnold that she also included on the USB drive she provided

---

[3] The use prohibitions described above do not apply to Ms. Arnold's Facebook communications and messages with Mr. Cressman. Counsel for HII previously represented to the Court that HII had downloaded a complete set of such messages and provided them to Ms. Arnold. May 21 Hrg. Tr. 99:7–14.

7

to defense counsel on April 21, 2025, ECF No. 280, at 6 ¶ 27, 10 n.4. Going forward Ms. Arnold may support her claims by using, subject to objection and the Court's ruling on the same, the 61 pages of documents described in ECF No. 280-37, and the 664 pages of documents contained on the USB drive.

At the hearing on May 21, 2025, Ms. Arnold testified about producing to defense counsel two sets of additional documents not included in the chart at ECF No. 280-37. The Court finds that this testimony was not credible. The first document is an undated letter from a physician—whose name and medical group have been redacted—stating that Ms. Arnold has been the caregiver for her mother for the previous three years, her mother's "condition improves greatly when she is being cared for by her daughter," and Ms. Arnold should be "excused from responsibilities at her workplace" to continue caring for her mother. ECF No. 290-1.

The second document consists of pages 2–4 of a 5-page document for Ms. Arnold's mother dated February 10, 2020, which lists her medications. ECF No. 290-5. According to defense counsel, Ms. Arnold produced the first page of this document to HII on April 21, 2025. ECF No. 280-37, at 2. It is identified in the chart as "February 10, 2020 'After Visit Summary' Discharge Instructions for R. Muniz from Sentara" with a notation that "[d]ocuments produced reflect that the 'After Visit Summary' was 5 pages, but only 1 page was produced." *Id.* Counsel for HII credibly testified that neither the first document nor pages 2–4 of the second document were produced by Ms. Arnold on April 21, 2025. May 21 Hrg. Tr. 95:6–96:3. Accordingly, Ms. Arnold is prohibited from using the documents identified in ECF Nos. 290-1 and 290-5 in support of her claims.

### III. CONCLUSION

For the reasons stated above, as well as in the report and recommendation discussed herein, the Court **ORDERS** that Ms. Arnold is **SANCTIONED**, pursuant to Rule 37(b)(2)(A)(ii), by limiting her use of certain documentary evidence in support of her claims going forward.

Subject to any objections and the Court's rulings on the same, the ***documentary*** evidence that Ms. Arnold may use to support her claims going forward is limited to:

(1) the text messages with Mr. Harris (work and personal phones) and Mr. Andrews identified above in section A(1)(a)–(c) above, as set forth in ECF No. 289-2, at 2–93, ECF No. 289-3, at 2–63, and ECF No. 289-4, at 2–12;

(2) screenshots of text messages included in the text strings identified in (1) above, contained in ECF No. 280-45, at 2–5 (Andrews), ECF No. 280-50, at 2–19 (Harris' personal phone), and ECF No. 280-51, at 2–22 (Harris' work phone);

(3) 61 pages of documents produced by Ms. Arnold to HII on April 21, 2025, and identified in the chart attached to defense counsel's affidavit, ECF No. 280-37;

(4) 664 pages of documents previously produced by HII to Ms. Arnold and also contained on the USB drive produced by Ms. Arnold to HII on April 21, 2025;

(5) other documentary evidence produced by HII to Ms. Arnold in discovery, including the communications between Ms. Arnold and Mr. Cressman obtained from his Facebook account; and

(6) HII's responses to discovery propounded by Ms. Arnold.[4]

---

[4] In the event HII files a motion for summary judgment, the Court will issue a notice to Ms. Arnold, as a *pro se* litigant, addressing, among other things, Ms. Arnold's right to respond to such a filing and the timing, manner, and content of any such response. Subject to the limitations in this order, Ms. Arnold's ability to respond to any motion for summary judgment encompasses all the means described in any such later notice from the Court.

Among the items of documentary evidence that Ms. Arnold is prohibited from using to support her claims going forward are:

(1) the text messages and screenshots identified above in section A(2)(a)–(r);

(2) the undated physician's letter, ECF No. 290-1; and

(3) pages 2–4 of the February 10, 2020 medical record listing medications, ECF No. 290-5.

The Clerk is **DIRECTED** to send a copy of this opinion and order to Ms. Arnold and all counsel of record.

**IT IS SO ORDERED.**

/s/
_____
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
May 30, 2025